IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| ERNEST WILLIAMS, #1120728 | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-06-092 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| DIRECTOR OF TDCJ-CID[1] | § | |

**REPORT AND RECOMMENDATION**

Before the Court is the Petition for a Writ of Habeas Corpus of Ernest Williams, a prisoner in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). (Instrument No. 1).  Respondent filed an Answer with Brief in Support seeking the dismissal of Petitioner's writ.  (Instrument No. 11).  Petitioner filed Objections to Respondent's Answer. (Instrument No. 13).  Petitioner also filed a "Motion for Bench Warrant or in the Alternative Motion for Live Federal Evidentiary Hearing" on December 19, 2006, and again on April 4, 2007. (Instrument Nos. 14 & 16). Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 2241 and 2254.  The State has custody of Petitioner pursuant to a judgment and sentence entered by the 23rd District Court of Brazoria County, Texas, in Cause No. 40,190, on July 24, 2002.  Petitioner was

---

[1] The previous named Respondent in this action was Doug Dretke.  Effective June 1, 2006, Nathaniel Quarterman succeeded Doug Dretke as Director of the TDCJ-CID and, under Rule 25(d)(1) of the Federal Rules of Civil Procedure, is automatically substituted as a party.

indicted for the offenses of murder, felon in possession of a firearm, and deadly conduct. State Record ("S.R.") at 2. The jury, after hearing all the evidence, found Petitioner guilty and assessed punishment, respectively, at forty years, ten years, and five years confinement. S.R. at 77-78.

Petitioner filed an appeal. The court of appeals affirmed Petitioner's convictions on October 23, 2003. *Williams v. State*, No. 01-02-00816-CR ) (Tex.App.–Houston [1st Dist.] 2003). Petitioner filed a Petition for Discretionary Review ("PDR") and the Texas Court of Criminal Appeals ("TCCA") refused review on May 26, 2004. *Williams v. State*, PDR No. 1982-03.

On March 5, 2005, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure. The state court, having reviewed the Petitioner's claims, entered Finding of Fact and Conclusions of Law recommending relief be denied and submitted its Findings and Conclusions to the TCCA. S.R. at 66-67. The TCCA denied Petitioner's state writ without written order on the findings of the trial court without hearing on November 23, 2005. *Ex parte Williams*, WR-62,093-01 at cover.

Petitioner filed the instant writ on February 9, 2006. In his federal writ, Petitioner claims he is entitled to federal relief based on the following grounds: (1) he received ineffective assistance of counsel on appeal because his attorney raised a meritless issue, thereby denying him of a meaningful appeal; (2) he received ineffective assistance of counsel at trial because his attorney: (a) failed to request jury instructions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide, (b) failed to object to the destruction of a 911 tape, (c) failed to timely investigate and request evidence, and (d) failed to object to an *Allen* or dynamite charge; and (3) he was denied a fair trial because the trial court, while reading the jury charge, made an improper

comment on sudden passion. Fed. Writ Pet. at 7-8B; Pet'r Memo. at 4-32. Although altering the order of the issues for purposes of discussion, the Court now proceeds to address each.

### A. *Ineffective Assistance of Trial Counsel Issue*

Petitioner contends that he received ineffective assistance of counsel at trial due to numerous errors committed by his attorney. The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel. U.S. CONST., Amend. VI. It does not, however, guarantee a criminal defendant "errorless representation." *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983). To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner's failure to establish either prong of Strickland necessarily requires a finding that counsel's performance was constitutionally effective. *Id.* at 687.

When determining whether counsel's performance was deficient, courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Id.* at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992) (a reviewing court must be highly deferential to the trial attorney's conduct and presume that assistance was reasonably effective). A petitioner must also overcome the presumption that the "challenged action 'might be considered sound trial strategy.'" *Wilkerson*, 950 F.2d at 1064 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also*, *Moreno*,

3

717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial"). Therefore, when making that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Strickland*, 466 U.S. at 690 (an ineffective claim is judged not by isolating a portion of counsel's representation, but on the totality of the representation).

The second prong of the test requires a petitioner to show prejudice. To establish prejudice, a petitioner must establish that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means a probability sufficient to undermine the confidence in the outcome. *Id*. A petitioner must "affirmatively prove prejudice." *Id.* at 693. A petitioner cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Nor can a petitioner rely on conclusory allegations to satisfy this prong. *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been here, the state court's ruling is entitled to deference under § 2254(d) and a federal court may not grant habeas relief unless it decides that the state court's application of the *Strickland* standard was "objectively unreasonable." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) (state factual determinations will not be overturned unless they are objectively unreasonable in light of the evidence). In making this

determination, a federal court's focus is on the state court's ultimate legal conclusion, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

### 1. *The Failure to Investigate Issue*

Petitioner alleges his attorney failed to timely investigate the facts of the case and request evidence. To establish that counsel was ineffective for failure to investigate, a petitioner must allege more than a failure–he must state with specificity what the investigation would have revealed, what specific evidence would have been disclosed, and how the evidence would have changed the outcome of the trial. *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Aside from alleging that counsel failed to obtain the 911 tape, which he contends would have reflected his emotional state at the time, Petitioner makes no suggestion of what other evidence would have been revealed, much less allege how any such evidence would have changed the outcome of the trial.

Turning to Petitioner's allegation that his attorney failed to obtain the 911 tape in a timely manner, the record reflects that defense counsel subpoenaed the 911 tape, however, the request was made more than a year after the call was placed and after the tape had already been mistakenly erased. Nevertheless, defense counsel was able to elicit testimony concerning Petitioner's emotional state at the time of the incident. In particular, the jury heard Petitioner testify that he called 911 immediately after the incident to report what he had done (Trial Transcript ("T.T."), Vol. 6 at 122:12-22) and that he was anxious and "feeling nervous and shaky like he wanted to throw up." T.T. Vol. 6 at 123:11-14; 125:7-24. To corroborate Petitioner's testimony, defense counsel also presented medical evidence, taken at the hospital after the incident, that showed Petitioner's pulse was elevated (*i.e.*, 99) and his blood pressure was abnormal (*i.e.*, 184/52). T.T., Vol. 6 at 125:7-24. The jury also heard Lashonda Bass testify that Petitioner came to her immediately after the incident

and confessed to her what he had done. T.T., Vol. 6 at 30. Bass testified that Petitioner was "trembling" (T.T., Vol. 6 at 31:18) and that "he was kind of crying; and his voice was shaking." T.T., Vol. 6 at 31:4-7. Therefore, even assuming that counsel failed to promptly request and obtain a copy of the 911 tape, Petitioner fails to establish that it resulted in prejudice under the requirements of *Strickland*. Petitioner's claim, lacking in merit, must be dismissed.

### 2. *The 911 Tape Issue*

Petitioner next claims that his attorney failed to object to the destruction of the 911 tape. Although not presented to the state courts, Petitioner's claim is now accompanied by his affidavit in which he, for the first time, details what he purportedly said in the 911 call. Inasmuch as Petitioner did not present the affidavit he now presents to the state courts, Respondent maintains that Petitioner is not allowed in his federal writ "to alter the deficient evidentiary posture of his claim." Resp's Answer with Brief in Support at 10. *See Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996) (holding that "a habeas petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to the state court."); *Joyner v. King*, 786 F.3d 1317, 1320 (5th Cir. 1986) (a federal habeas court may not "accommodate new factual allegations in support of a previously asserted legal theory," even where "these factual allegations came into existence after the state habeas relief had been denied"). Respondent also maintains that "the facts alleged in the affidavit are unexhausted, but should be treated as exhausted and procedurally barred." Resp's Answer with Brief in Support at 10. The Court finds merit in Respondent's position and agrees that Petitioner is procedurally barred from relying on his newly created affidavit concerning the content of the 911 call.

Nevertheless, even assuming that the facts alleged in the affidavit were not unexhausted and hence procedurally barred, Petitioner makes no showing that the tape, considered in light of all the other evidence, could form the basis for exonerating him, or that the 911 tape was discarded in bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In fact, the record is clear that the prosecutor did not withhold the 911 tape, in fact, he did not actually have the tape, and did not instruct that the tape be erased. T.T., Vol. 6 at 56:9-25. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (establishing a *Brady* claim requires a petitioner to show that the prosecution withheld evidence, the evidence was favorable to the petitioner, and the evidence was material). The record is also clear that the police did not purposefully erase the 911 tape to destroy evidence, but instead it was erased inadvertently. T.T., Vol. 6 at 57:1-25; 58:1-2. *See California v. Trombetta*, 467 U.S. 479, 488-91 (1984) (due process did not require a law enforcement agency to preserve breath samples taken from suspected drunk drivers in order for the results of the breath analysis tests to be available in a criminal prosecution). Accordingly, there was no meritorious objection that counsel could have made. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) (holding an attorney cannot be judged deficient for failing to raise a frivolous point); *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998) (counsel will not be found deficient for failing to press a frivolous or futile issue).

Although failing to show counsel's performance was deficient, Petitioner has also failed to establish prejudice. *See Strickland*, 466 U.S. at 693 (prejudice must be affirmatively proven and not merely alleged); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995) (simply alleging prejudice will not suffice). As discussed in the preceding section, Petitioner has not shown that, but for counsel's alleged error, the result would have been different. *See Schlang* 691 F.2d at 799 (conclusory allegations will not suffice). For these reasons, this claim must be dismissed.

7

### *3. A Jury Instruction on Lesser Included Offense Issue*

Petitioner next claims that his attorney failed to request jury instructions on the lesser included offenses of involuntary manslaughter and criminally negligent homicide.

Similar to his prior claim, the Court observes that this allegation differs from the one Petitioner presented in state court. In particular, in his state habeas application Petitioner faulted trial counsel for failing to request an instruction on the lesser included offense of *felony murder* alleged in the indictment in count one, paragraph two. S.R. at 26-31. In response to that claim, the State pointed out that the portion of the indictment on which Petitioner relied alleged another statutory method of committing murder, which was also a first degree felony, so it was not a lesser included offense and that requesting any such instruction would not have benefitted him because the range of punishment was the same. S.R. at 51-51. The state habeas trial court accepted the State's response and recommended that relief be denied. Thereafter, the TCCA denied relief based on state habeas trial court's recommendations. Unlike his state writ, in his federal writ Petitioner now claims that his attorney failed to request an instruction on two other offenses–involuntary manslaughter and criminally negligent homicide. Petitioner failed to present this claim in state court and, as such, it is unexhausted. Furthermore, even if Petitioner were to raise this issue in a successive state habeas corpus petition, since the TCCA would refuse review under the abuse-of-the-writ doctrine, it would be procedurally barred. *Martinez v. Johnson*, 255 F.3d 229, 239 (5th Cir. 2001).

However, even assuming that this claim was not procedurally barred, it lacks merit. Texas courts apply a two-part test to determine entitlement to an instruction on a lesser included offense. *See Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex.Crim.App. 1993). "[F]irst, the lesser included offense must be included within the proof necessary to establish the offense charged, and, second,

8

some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty of the lesser offense." *Id*. at 673. While Petitioner points to his own testimony to now claim the shooting was merely an "accident," it is important that his testimony be placed in context. In particular, it is clear that Petitioner did not testify that the gun accidentally went off. Instead, he testified that he shot the gun out of fear for his safety and that he, figuratively as opposed to literally, blanked out after the first shot. Contrary to his contentions, his testimony does not show he committed involuntary manslaughter or criminally negligent homicide under Texas law. *See* Tex. Pen. Code § 19.01, *et. seq.*

Moreover, it is not unreasonable for counsel to forego an instruction on a lesser included offense of the charged offense if the jury is not persuaded that the defendant committed every element of the charged offense since it would result in the jury acquitting him. Here, had the jury believed that Petitioner did not commit elements of murder, which would have been necessary to find him guilty of one of the lesser offenses, the jury would have acquitted him. Having failed in his burden under *Strickland*, this claim must be dismissed.

### 4. *The Allen ("Dynamite") Charge Issue*

Petitioner alleges that his attorney erred in failing to object to an *Allen* or dynamite charge since the charge was not proper under Article 36.16 of the Texas Code of Criminal Procedure and the jury did not indicate it was deadlocked.

Before proceeding to address this claim, it is necessary to place Petitioner's claim into context. The record reflects that the jury found Petitioner guilty of three of the offenses[2] charged

---

[2] The three offenses charged consisted of the following: the first offense charged was murder; the second was felon in possession of a firearm; and the third was deadly conduct. Tr. at 159; 162.

9

at the guilt innocence phase. During the jury's deliberation at the punishment phase of the trial, the jury sent out "jury note #10 on punishment" informing the court that they had agreed on the penalty for the first and the third charges, but asked what would happen if they could not agree on the penalty for the second charge. S.R. at 168; T.T., Vol. 8 at 4. The court discussed the matter with the attorneys. In the discussion, all agreed that any sentences imposed would run concurrent; if the jury was unable to determine a penalty for the second charge it would not impact the penalty decisions they already made on charges one and three; and the prosecutor also stated on the record that if the jury came back with a penalty on both the first and third charge, he would not later attempt to retry Petitioner on the second charge. T.T., Vol. 8 at 4-6. Accordingly, with this understanding, the attorney agreed to allow the trial court to submit a supplemental instruction to the jury. Tr. at 173.

In order to obtain relief based upon an *Allen* charge, a petitioner must establish that the charge, under the totality of the circumstances, was so coercive as to have unconstitutionally rendered the petitioner's trial fundamentally unfair. *Boyd v. Scott*, 45 F.3d 876, 881-82 (5th Cir. 1994). The constitutionality of an *Allen* charge is often evaluated by comparing it to other charges challenged on constitutional grounds. *Montoya v. Scott*, 65 F.3d 405, 409 (5th Cir. 1995); *Boyd v. Scott*, 45 F.3d at 881-84. Having done so, this Court finds that the instruction given in this case at the punishment phase of the trial, after Petitioner had been found guilty by the jury, was not so coercive as to deprive Petitioner of a fundamentally fair trial. *Compare Lowenfield v. Phelps*, 484 U.S. 231, 235 (1988); *Jenkins v. United States*, 380 U.S. 445, 446 (1965); *United States v. Duke*, 492 F.2d 693, 697 (5th Cir. 1974); *Boyd v. Scott*, 45 F.3d at 878-84; *Bryan v. Wainwright*, 511 F.2d 644, 646 (5th Cir. 1975); *see also*, *Bledsoe v. State*, 21 S.W.3d 615, 622 (Tex.App.–Tyler 2000) (under

Texas law, there is no violation of Article 36.16 when a trial court submits a non-coercive *Allen* charge).

Moreover, after considering the sworn affidavit that defense counsel prepared and submitted in response to Petitioner's claim in state court, this Court cannot conclude that counsel was ineffective. In particular, defense counsel stated:

> This affidavit is made in response to the allegation of Ernest Williams [Petitioner] that he received ineffective assistance of counsel. Specifically, whether I was ineffective in failing to object to the court's submission of an "Allen" or "Dynamite" charge on punishment. I recall the jury had been deliberating long into the second day of deliberations when it submitted note number ten (1). I eventually agreed to an "Allen" charge as a matter of trial strategy. My thinking was the punishment for count one (1), being a 1st degree felony, would either be acceptable to Mr. Williams or would exceed the punishment range for count two (2) which was only a 3rd degree felony. If he got a low number, then Ernest wouldn't have to worry about the state re-trying him on count two. If he got a big number for the murder charge, then it really wouldn't matter what he got for the count two because the time was running concurrent. I believe then, and still do, that Ernest Williams had nothing to lose by agreeing to the "Allen" charge. His benefit would not be facing a second trial if the state did not like the amount of punishment assessed for count one.
>
> Considering the length of time of the deliberations and the context of note ten, I believed that the jury was clearly having a difficult time reaching a verdict and appeared to be deadlocked. I did review the proposed supplemental charge. I did not believe it to be coercive. Moreover, I believed it to be appropriate.

S.R. at 64-65. The state habeas court credited counsel's statement in deciding this claim in Petitioner's state habeas writ. S.R. at 66-67. Upon federal review, a state trial court's credibility determination, particularly where the trial court judge and the state habeas judge are the same, is entitled to deference by this Court. S.R. at 1. Accordingly, this Court concludes that counsel's performance was not deficient, but was instead a "conscious and informed decision on trial tactics

and strategy." *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997) (*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also*, *Moreno*, 717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory when his decision was a reasonable strategic choice based upon a "professional assessment of the plausibility of the defense and its likelihood of success at trial").

In conclusion, while Petitioner alleges that his attorney at trial committed a number of errors that deprived him of effective assistance of counsel, he has failed to establish that counsel's performance was either deficient or resulted in any prejudice. Further, since Petitioner has not established, and the Court does not find, that the state court's application of *Strickland* was objectively unreasonable, federal habeas relief is simply not warranted.

The Court therefore **RECOMMENDS** Petitioner's writ be **DISMISSED** on all of his claims of ineffective assistance of trial counsel.

### B. *Trial Court Error Issue*

Petitioner alleges that he was denied a fair trial because the trial court, while reading the jury charge at the punishment phase, made an improper comment on sudden passion. Fed. Writ Pet. at 8B; Pet'r Memo. at 29-32. In particular, when reading the charge to the jury, the trial court stated, in part, the following:

> Our statute provides that the punishment for Murder with sudden passion–That's not familiar to me. Is that part supposed to be in there? It is? Do you see what I am talking about?

T.T., Vol. 7 at 69:22. Petitioner maintains that this statement suggests the trial court judge was not impartial and violates "Petitioner's presumption of innocence" guaranteed under the Constitution and Texas law. Fed. Writ Pet. at 8B. Petitioner also claims that the trial court judge violated Article

38.05 of the Texas Code of Criminal Procedure which precludes a judge from commenting on the weight of the evidence and supports the conclusion that the judge was not impartial. *Id*.

The record reflects that while reading the charge to the jury at the punishment phase of the trial the court made the following remark concerning the sudden passion instruction:

> 'CHARGE OF THE COURT ON PUNISHMENT. MEMBERS OF THE JURY: Having found the defendant, ERNEST ELROY WILLIAMS, herein guilty of the offense of Murder, as alleged in Count One of the Indictment; Felon in Possession of a Firearm as alleged in Count Two of the Indictment; and Deadly Conduct as alleged in Count Three of the Indictment, it now becomes your duty to assess the punishment in this case.
>
> Our statute provides that the punishment for Murder is by confinement in the penitentiary for a period of not more than ninety-nine (99) years or less than five (5) years, or life. In addition to imprisonment, an individual adjudged guilty of Murder may be punished by a fine not to exceed $10,000.00. Our statute provides that the punishment for Murder with sudden passion' - -
>
> That's not familiar to me. Is that part supposed to be in there?

T.T., Vol. 7 at 70-71. Defense counsel responded "yes" and asked to approach the bench. With the jury excused, the following discussion took place between the trial court judge and counsel:

> DEFENSE COUNSEL: Very recent case out, Blue versus State, which talks about comments by judges during the course of giving instructions, these sorts of things. What you are about to read Judge, is the part that would have reduced this from first degree to second degree murder. All right.
>
> Specifically, our statute for sudden passion is by confinement for a period of not more than 20 years or less than 2 years; and there is a special issue that's also included in this.
>
> What I'm afraid is you just made a comment to the jury right before reading this that you said, "Oh, I'm not really familiar with this." That could be interpreted by the jury to mean that this is something you really don't know anything about and have some sort of - - unintentionally, you may have conveyed to them that this should not be given the proper consideration because you, yourself, really don't know anything about it. I know it wasn't

13

> intentional; but as we've talked about before, sometimes it's not what's intentional.
>
> THE COURT: I just didn't want to read something unless it was supposed to be in the charge.
>
> [DEFENSE COUNSEL]: I understand that and it is–that's what I'm afraid when you made that comment. "I'm not familiar with this. Should this be in there," that that [sic] was an inadvertent comment that could be misinterpreted by the jury.
>
> THE COURT: Where is murder?
>
> [DEFENSE COUNSEL]: Judge, maybe what's happened–I don't know about the last time you charged a murder time–
>
> THE COURT: Long time.
>
> [DEFENSE COUNSEL]: Used to be that this issue was decided in guilt/innocence. Since recently, the special issue on sudden passion has been changed to be decided on punishment.
>
> THE COURT: Okay.
>
> [DEFENSE COUNSEL]: Boggles the mind, but that's what the rule is; and, so I'm afraid when you made that comment, that it could somehow in the juror's mind–
>
> THE COURT: Okay. Well, I'm not concerned about that. You can make an objection to that, but I just–
>
> [DEFENSE COUNSEL]: Okay. I'm going to make an objection for the record, and I think the Court should just–when the jury comes back, say, "I need to start this all over" and just start over; and they won't even know what they missed.
>
> THE COURT: That's what I planned on doing.

T.T., Vol. 7 at 71-73. When the jury returned the trial court judge instructed "Okay, Ladies and gentlemen, I'm just going to start over." T.T., Vol. 7 at 74-75. The judge read the jury charge to the jury, which included a limitation instruction which provided:

> During your deliberations you are instructed that you should not consider the remarks, rulings or actions of the judge presiding during the trial as any indication of the court's opinion as to the existence or nonexistence of any fact or as an indication of the Court's opinion as to the punishment to be assessed against the defendant.

T.T., Vol. 7 at 81:10-16.

Petitioner claims, in part, that the trial court's error violated his presumption of innocence. The Court cannot agree. As pointed out by the Texas appellate court, the judge's comment was made during the punishment phase of the trial, which was *after* the jury had already returned a verdict of guilt.

Petitioner also claims that the trial court judge violated Article 38.05 of the Texas Code of Criminal Procedure which precludes a judge from commenting on the weight of the evidence and supports the conclusion that the judge was not impartial. However, the law is clear that federal courts do not "sit to review the mere admissibility of evidence under state law" or errors in the application of state law. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999). Instead, a federal court is limited to deciding whether the conviction violated the Constitution or statutes of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Errors in state law do not warrant federal habeas corpus relief unless the errors are so extreme they constitute a denial of fundamental fairness under the Due Process Clause. *Little v. Johnson*, 162 F.3d at 862; *see also Deaden v. McNeill*, 978 F.2d 1453, 1458 (5th Cir. 1992), *cert. denied*, 508 U.S. 960 (1993) (errors in state law, including evidentiary errors, are generally not cognizable in federal habeas corpus). "Thus, only when wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be granted." *Little v. Johnson*, 162 F.3d at 862.

To prevail on claims of trial court error, a petitioner must establish that the error did more

than merely affect the verdict. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). He must establish that it rendered the trial, as a whole, fundamentally unfair. *Id.* An error by the trial court renders the trial fundamentally unfair only if there is a reasonable probability that the verdict would have been different had the trial been conducted properly. *See Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). Applying the federal harmless error standard, the error must have "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting*, *Kotteakos v. United States*, 328 U.S. 750, 776 (1946). Accordingly, a petitioner is not entitled to federal habeas relief unless he can establish that the trial court error resulted in actual prejudice. *See id.* Petitioner has made no such showing.

The Court also observes that, while Petitioner previously alleged that the trial court's comments were so egregious that he was denied the fundamental right to a fair trial, the court of appeals squarely rejected his contention and explained:

> In *Blue*, a divided Court of Criminal Appeals held that a trial court's comments at the beginning of the jury-selection process constituted fundamental error that required no objection to preserve error for appeal because the comments "vitiated" the defendant's presumption of innocence before the venire. *Blue [v. State]*, 41 S.W.3d [129], 132-33 [(Tex. Crim. App. 2000)]. We note, at the outset, that this case differs from *Blue* because the trial court's remark occurred at the sentencing stage, when the fundamental right to be presumed innocent had expired, given the jury's having already found appellant guilty of the three charged offenses. Although a defendant is entitled to an impartial judge at every state of the trial, *see id.* at 138 (Keasler, J. concurring), "there will be few cases where the judge's statements when viewed objectively are so egregious as to render him biased." *Id.*
>
> As excerpted above, the record demonstrates that the trial court's question derived from a momentary confusion concerning whether the instruction on sudden passion should have been included in the charge on punishment. The record further reflects that appellant's counsel described the trial court's comments as "inadvertent," and the conference outside the presence of the jury clarified that the instruction was properly included in the charge. At the

> conclusion of that conference, appellant's counsel proposed that the trial court inform the returning jurors that he would "just start over; and they won't even know what they missed." The trial court agree, instructed the jurors on their return that he would "start over," and complied with appellant's counsel's request by reading the entire charge without any interruptions concerning the instruction on sudden passion.
>
> We note further that the complete jury charge on punishment included the instruction, quoted in full above, that the jurors were to disregard "remarks, rulings[,] or actions of the judge . . ." as indicating the trial court's opinion concerning any fact or the punishment to be assessed. We presume that the jury followed this instruction. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex.CrimApp. 2002).
>
> Given the trial court's second, corrected reading of the charge, as proposed by appellant, together with the trial court's additional instruction concerning incidental comments by the court, we conclude that the trial court's initial comments do not suggest egregious bias. *See Blue*, 41 S.W.3d at 138 (Keasler, J. concurring). Because the alleged error thus fails to constitute fundamental error, appellate had to comply with the usual requirements to preserve his complaint in order to complain on appeal. *Compare Blue*, 41 S.W.3d 132-33 (holding that no objection required to preserve "plain error" premised on comments by trial court that "effectively destroyed defendant's presumption of innocence").

C.R. at 44-46. Not only has Petitioner failed to establish, but this Court is unable to conclude, that the state court decision was objectively unreasonable. 28 U.S.C. § 2254(d)(1)-(2).

The Court therefore **RECOMMENDS** Petitioner's claim be **DISMISSED** on this issue.

### C. *Ineffective Assistance of Appellate Counsel Issue*

Petitioner claims he received ineffective assistance from counsel on appeal because counsel raised a meritless issue on appeal (*i.e.,* the trial court's comment while reading the jury charge regarding sudden passion) and thereby denied him a meaningful appeal. Fed. Writ Pet. at 7; Pet'r Memo. at 4-11.

In order to establish a claim for ineffective assistance of appellate counsel, Petitioner must establish that counsel's performance fell below an objective standard of reasonableness and that he

was prejudiced by it. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (applying standard set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). In doing so, he has the burden of overcoming the strong presumption that counsel's performance was effective. Appellate counsel is not required to raise baseless or unwarranted issues on appeal. *See id.* at 278. Furthermore, a petitioner has no constitutional right "to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The only ground of error that appellate counsel presented on appeal was the claim that fundamental error was committed by the trial court judge when it commented on the evidence at the punishment phase of the trial. Although not ultimately successful on this issue, appellate counsel cannot be considered deficient for failing to raise issues on appeal that counsel believes, in his professional judgment, are meritorious. *See Smith v. Robbins*, 528 U.S. at 278; *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). Moreover, Petitioner has not shown that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." *Smith*, 528 U.S. at 288. Finally, any contention that had different counsel been appointed on appeal, that Petitioner would have been successful in gaining him acquittal is nothing more than speculation and such conclusory statements are insufficient to support this claim. *Schlang v. Heard*, 691 F.2d at 799.

The Court therefore **RECOMMENDS** Petitioner's claim be **DISMISSED** on this issue.

### CONCLUSION

Upon this record, the Court concludes that an evidentiary hearing is unwarranted and, therefore, **RECOMMENDS** that the Petitioner's requests for an evidentiary hearing (Instrument

Nos. 14 & 16) be **DENIED**.  In addition, for all the reasons stated, the Court **RECOMMENDS** the Petition for a Writ of Habeas Corpus of Ernest Williams (Instrument No. 1) be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties.  The Parties **SHALL** have until **July 27, 2007**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk.  The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553.  **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration.   Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____9th_____ day of July, 2007.

_____
John R. Froeschner
United States Magistrate Judge